UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD BALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-00855-DML-RLY |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## Decision on Judicial Review

Plaintiff Ronald Ball applied in January 2012 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that he has been disabled since January 13, 2012. Acting for the Commissioner of the Social Security Administration following a hearing on March 5, 2013, administrative law judge Rosanne M. Dummer issued a decision on March 15, 2013, that Mr. Ball is not disabled. The Appeals Council denied review of the ALJ's decision on March 26, 2014, rendering the ALJ's decision for the Commissioner final. Mr. Ball timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Ball argues in his opening brief that the ALJ erred at step three, in his assessment of Mr. Ball's credibility, and in his formulation of Mr. Ball's residual functional capacity. His reply brief raises a new argument that there was an error at step two. Mr. Ball's arguments—whether in the opening or reply briefs—ignore

the actual contents of the ALJ's decision. They are chock full of boilerplate that bear no connection to the ALJ's decision. He has not demonstrated any error.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits). Mr. Ball is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of

Impairments includes medical conditions defined by criteria the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and RFC; if so, then he is not disabled.

The claimant bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his vocational profile and functional capacity.  20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Applicable Standard of Review

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are

3

supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Mr. Ball was 57 years old at the alleged onset of his disability in January 2012, and 58 years old at the time of the ALJ's decision. He applied for DIB immediately after his long-time job with a cement company was eliminated by his employer. Mr. Ball had worked for the company for 33 years, and had spent the last three of those years working as a serviceman supervisor.

The ALJ determined at step one that Mr. Ball had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ identified one severe impairment: mild to moderate diffuse lumbar spondylosis. She addressed

4

several other physical impairments and a mental impairment (depression), but found they were non-severe. Mr. Ball's depression, when measured against the B criteria of the mental health listings, did not cause any limitations in daily living activities or social functioning and only mild limitations in concentration, persistence, or pace. At step three, the ALJ found no listings were met and considered whether Mr. Ball's physical impairments met listing 1.04, which describes disorders of the spine.

For purposes of steps four and five, the ALJ determined that Mr. Ball has the residual functional capacity to perform the full range of medium work, as defined at 20 C.F.R. § 404.1567(c). Medium work involves lifting no more than 50 pounds at a time and frequent lifting or carrying of objects weighing up to 25 pounds. Further, if a person is capable of medium work, then he is also capable of performing light work and sedentary work. *See id.* Based on the opinion of a vocational expert that the demands of Mr. Ball's past relevant work is consistent with that RFC, the ALJ found that Mr. Ball is capable of performing (a) his past relevant work as a supervisor as that job is generally performed at the light level and (b) his past relevant work as a purchasing clerk as that job was actually performed and as it is generally performed in the national economy. Accordingly, the ALJ found Mr. Ball not disabled at step four and did not reach step five.

## II.     The ALJ did not err at step two.

Mr. Ball's opening brief did not allege any error by the ALJ at step two. His reply brief, however, asserts the ALJ erroneously determined at step two that his

5

depression was non-severe. Mr. Ball waived this argument because he did not include it in his opening brief. Even if it were not waived, the argument is not supported by any discussion of the facts or the law. Mr. Ball merely stated an issue that the ALJ "determined erroneously at Step 2 that the claimant's depression was not even a severe impairment." Dkt. 24 at p. 4. He failed to address the ALJ's detailed discussion of the mental health listings B criteria, which led to the ALJ's conclusion that the depression was not a severe impairment and, therefore, could not possibly meet a listing. The court finds no error in the ALJ's analysis of Mr. Ball's depression at step two.

### III. The ALJ did not err at step three.

Mr. Ball's assertions of error at step three are based on the ALJ's evaluation of an opinion of Mr. Ball's primary care physician, Dr. Matlock. Dr. Matlock completed a functional evaluation form dated March 1, 2013 (just prior to the hearing) in which he opined that Mr. Ball has the capacity to sit, stand, and walk for only six hours total in a day (up to four hours sitting and two hours standing or walking). (R. 541). The form provides no explanation for his opinion except that Mr. Ball has a diagnosis of arthralgia. (*Id.*). "Arthralgia" means pain in a joint.[1] Because a person is disabled if his residual functional capacity does not permit him to work a total of eight hours a day, Mr. Ball contends the ALJ was required to find him disabled at step three.

---

[1] *See* http://www.mayoclinic.org/symptoms/joint-pain/basics/definition/sym-20050668 ("Joint pain is sometimes called arthritis or arthralgia." It can be mild or severe).

6

He argues that the ALJ "arbitrarily rejected" Dr. Matlock's opinion. No reasonable reading of the ALJ's decision could lead to the conclusion she arbitrarily rejected Dr. Matlock's opinion. She noted that Dr. Matlock provided no explanation of the basis for his opinion—except that Mr. Ball has a diagnosis of joint pain—and none could be gleaned from any of the records of Mr. Ball's treatment by Dr. Matlock. She cited the results of Mr. Ball's MRI which revealed only mild to moderate diffuse lumbar spondylosis. (*See* R. 525). She contrasted the opinion with a functional capacity assessment prepared by an occupational therapist at IU Health who stated that Mr. Ball is suited for the demands of the lower end of medium work. (R. 539). She contrasted Dr. Matlock's opinion with the results of range-of-motion testing conducted by the consultative examiner. She discussed that Dr. Matlock had not prescribed any special treatment, such as physical therapy, and his treatment notes did not even mention back pain in the records after September 2012, when Mr. Ball first complained of pain in his lower back and the MRI was done. She discussed Mr. Ball's maintenance of a very active lifestyle, including engaging in strenuous work cutting wood, working on his hobby farm, and being able to walk for more than a mile before needing a break. (R. 45). She also remarked that the opinion was apparently based heavily on Mr. Ball's reports of his limitations, yet the ALJ had found he had overstated his limitations.[2] These

---

[2] In his reply brief, Mr. Ball attacks the ALJ's description of Dr. Matlock's opinion as having been "elicited solely in contemplation of litigation," apparently referring to Mr. Ball's disability application. This argument should have been contained in the opening brief so the Commissioner could have responded to it. It is waived. Even if it were not waived, any misstep by the ALJ because of that

reasons sufficiently support the ALJ's decision not to give weight to Dr. Matlock's opinion.

     Nor was the ALJ required to "summon a medical expert" to testify whether Mr. Ball's back impairment met a listing. The ALJ identified the absence of medical findings consistent with the disorders of the spine listing 11.04 and noted that state agency examiners had found Mr. Ball did not even have a severe physical impairment—let alone one that possibly could satisfy a listing. Mr. Ball does not even attempt to point to any medical evidence that could be found to meet the criteria under listing 11.04. Indeed, he does not even discuss the listing's criteria. Mr. Ball insists the ALJ was required to obtain an updated medical opinion whether a listing was met because Dr. Matlock's functional evaluation was new evidence the state agency examiners could not have considered when they determined Mr. Ball did not even have a severe physical impairment. The court disagrees. As discussed above, the ALJ sufficiently addressed Dr. Matlock's opinion and reviewed the medical evidence. The court will not find error in the ALJ's step three decision when Mr. Ball has not cited any evidence that could support a finding that his back impairment met or equaled a listing. No fair reader of the ALJ's opinion could conclude—as Mr. Ball asserts—that she either lacked sufficient medical evidence to make an informed judgment whether Mr. Ball was disabled or

---

characterization does not overshadow all the other reasons the ALJ rationally provided for discounting Dr. Matlock's opinion that Mr. Ball can work only 6 hours a day.

that she simply assumed Mr. Ball's combined impairments did not medically equal a listing.

The ALJ's discussion of the medical evidence, including expert medical opinion in the record, rationally supports her determination that no listing was met and Mr. Ball was not disabled at step three.

### IV. The ALJ's credibility determination is not patently wrong.

Mr. Ball's arguments regarding the ALJ's credibility determination are boilerplate and, frankly, not deserving of any analysis by the court. Without mention of any of the ALJ's discussion, Mr. Ball makes the sweeping generalizations that the ALJ's credibility determination is (a) contrary to the evidence, (b) contrary to SSR 96-7p, (c) perfunctory, (d) conclusory, and (e) intentionally vague. (Dkt. 17 at pp. 14-17). He complains too that the ALJ used the "backward" boilerplate language suggesting she first formulated an RFC and then rejected as not credible any statements inconsistent with the RFC. As noted numerous times before, that language articulation error is harmless so long as the ALJ provides rational support for her credibility determination. *E.g., Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012). In his reply brief, Mr. Ball states the credibility determination is wrong because the ALJ did not give proper weight to Dr. Matlock's opinion and if she had, she would have viewed Mr. Ball as fully credible. The court has already addressed the ALJ's evaluation of Dr. Matlock's opinion and found that she supported it with substantial evidence.

Moreover, the ALJ in fact provided reasons for doubting Mr. Ball's statements regarding the severity of his back pain and its effects on his functioning. Among other things, she discussed the lack of any treatment regimen, including physical therapy, after the MRI showed Mr. Ball had only mild to moderate lumbar spondylosis.

Mr. Ball has not demonstrated any error in the ALJ's credibility determination.

## V.   **Mr. Ball has not shown error in the RFC.**

Mr. Ball's argument that the ALJ erred in formulating the RFC is duplicative of his arguments regarding step three and the ALJ's credibility determination—that the ALJ failed to accord proper weight to Dr. Matlock's opinion that Mr. Ball can work only six hours in a day, and not eight. The court has already found that the ALJ's evaluation of Dr. Matlock's opinion and her conclusion it was not entitled to weight is supported by substantial evidence. An ALJ need include in her RFC only those limitations she finds are supported by the record or otherwise credible. She did that here. Mr. Ball has not demonstrated any error in the ALJ's RFC determination.

## **Conclusion**

For the foregoing reasons, the Commissioner's decision that Mr. Ball is not disabled is AFFIRMED.

So ORDERED.

Date: July 31, 2015

							*Debra McVicker Lynch*
							Debra McVicker Lynch
							United States Magistrate Judge
							Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system